Filed/Docketed
Apr 08, 2020

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

| IN RE:<br><br>**KRAMER, ROBERT BRETT,**<br><br>Debtor. | **Case No. 19-12014-R**<br>**Chapter 7** |
|---|---|

## <u>ORDER DENYING MOTION TO DISMISS CASE</u>

Before the Court is the Motion to Dismiss Case and Notice of Opportunity for Hearing ("Motion") (Doc. 11) filed by Trak-1 Technology, Inc. and Premier Staffing Services, LLC ("Movants") on November 1, 2019, and the objection filed by Debtor Robert Brett Kramer ("Debtor") on November 25, 2019 ("Objection") (Doc. 28).  The Court held an evidentiary hearing on the Motion and Objection on January 29, 2020.  On February 7, 2020, Movants filed a post-hearing brief and supplement (Docs. 52 and 54).  Debtor filed a post-hearing response brief on February 14, 2020 (Doc. 53), after which the Court took the matter under advisement.

Upon consideration of the pleadings and record in this case, the testimony elicited and exhibits admitted at the hearing, the briefs and arguments of counsel, and applicable law, the Court finds and concludes as follows:

The Court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b), and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**Background**

Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on September 30, 2019.   Historically, Debtor has earned significant income as an investment advisor through a limited liability company (the "LLC") in which Debtor holds a 23% interest.   Debtor also serves as the firm's Chief Investment Officer.   In addition, Debtor receives royalties and other income from passive investments and has the right to draw some income from an irrevocable trust.   Debtor's bankruptcy schedules reveal non-exempt assets that may be liquidated for the benefit of creditors.

Movants are Debtor's only creditors.   In 2018 and 2019, a state court found Debtor liable to Movants for funds that Debtor's wife had embezzled from Movants.   The state court found that Debtor benefited personally from his wife's wrongful conduct, and therefore was unjustly enriched in the amount of the embezzled funds. Movants were awarded a judgment against Debtor that, with pre- and post-judgment interest, currently totals approximately $3.2 million (the "Judgment").   The state court also imposed a constructive trust against Debtor's then-homestead on the ground that some of the embezzled funds had been used to remodel the home.

After the state court found Debtor liable, but before the Judgment was entered, Debtor liquidated his non-exempt stock portfolio and used the proceeds to purchase and move into another home (the "26th Street Property"). In his bankruptcy schedules, Debtor lists the 26th Street Property as his homestead, and claims an exemption in 100% of its value pursuant to Oklahoma's exemption law.

2

Debtor appealed the Judgment, but cannot afford to post bond and has been unable to obtain a stay of execution from the trial court or the appellate court. After the entry of the Judgment, Movants garnished Debtor's bank and investment accounts, wages, and bonuses, and obtained a charging order on his share of distributions from the LLC. Movants also obtained an order imposing a constructive trust in their favor against the 26th Street Property, and began the process of foreclosing on the 26th Street Property.  At that point, Debtor decided to file for relief under Chapter 7 of the Bankruptcy Code.

By virtue of 11 U.S.C. § 362,[1] Movants are now stayed from executing on the Judgment or taking any action against the 26th Street Property.  Debtor has filed an adversary proceeding seeking to avoid the Movants' lien or interest in the 26th Street Property under § 522(f).

Movants assert that Debtor filed this Chapter 7 case in bad faith and seek dismissal pursuant to § 707(a).  Movants also contend that dismissal is required because Debtor's debt is consumer debt and he earns too much money to qualify as a Chapter 7 debtor under the so-called Means Test set forth in § 707(b).

**Findings of fact**

Debtor was the only witness to testify at the evidentiary hearing.  The Court finds Debtor a careful and credible witness.  Debtor, a 58-year-old investment advisor, has been married to his wife ("Wife") for more than 35 years. Together they have four children, all

---

[1]      Unless otherwise stated, all references to "Section" or "§" herein relate to sections of the Bankruptcy Code, Title 11 of the United States Code.

3

of whom are now adults. From 1996 through 2009, Wife was employed by Movants, and from 2004 to 2009 at least, was their Chief Financial Officer.[2]  In 2009, Movants accused Wife of embezzling from them and terminated her employment.  In 2012, Wife entered into a plea agreement wherein she pled guilty to two criminal charges of embezzling $1.8 million[3] from Movants in exchange for a deferred five-year sentence.[4]

Movants sued both Debtor and Wife in state court to recover the embezzled funds.[5] In 2015, the state court entered a civil judgment against Wife in the amount of $1.8 million, which judgment was affirmed by the Oklahoma Court of Civil Appeals later that year. Litigation continued against Debtor, and in 2017, the state court held a four-day bench trial to determine Debtor's liability to Movants.  On August 18, 2018, the trial court entered its Order Following Non-Jury Trial ("August 2018 Order").[6] Therein, the court found Debtor was personally unjustly enriched in the amount of $1.8 million – *i.e.*, the amount that Wife embezzled – finding that because Wife supported the family with the embezzled funds, Debtor did not have to spend that amount to support the family, and therefore he directly and indirectly benefited from Wife's embezzlement.  Thus, the court held Debtor liable to

---

[2]      The Movants are affiliated entities with shared management.  Movants' principals are Wife's brother and sister-in-law.

[3]      Wife admitted to embezzling $1,422,311.73 from one Movant and $367,661.20 from the other, for a total of $1,789,972.93.  For convenience, the Court will refer to the aggregate amount of embezzled funds as $1.8 million.

[4]      Movants' Exhibit 19.

[5]      During the initial stage of the civil litigation, Wife was deposed by Movants, wherein she denied that she embezzled from Movants.  Because Wife had previously admitted under oath to embezzlement of $1.8 million in accepting the plea agreement in the criminal matter, Wife was prosecuted for perjury, and her deferred sentence was accelerated.  Movants' Exhibits 20-23.

[6]      Movants' Exhibit 7.

Movants in the amount of $1.8 million, plus pre-judgment interest at the rate of 6% from and after October 2009,[7] bringing the total judgment to approximately $2.9 million.[8]

The trial court further found that Wife spent approximately $135,000 of the embezzled funds to remodel the couple's homestead located at 5827 East 79th Street, Tulsa, Oklahoma ("79th Street Property"). Accordingly, the court imposed a constructive trust on the 79th Street Property in Movants' favor in that amount.

The August 2018 Order did not resolve all claims between the parties, so litigation continued for another six months.[9] During this period, Debtor actively sought to settle with Movants, and in connection therewith, reluctantly disclosed information about his financial affairs, *i.e.*, identification of bank and investment accounts and business interests. Movants did not favorably respond to Debtor's settlement overtures.

In February 2019, the parties agreed to dismiss the remaining claims, giving rise to the entry of a final appealable judgment.[10] Debtor and Movants could not agree on the form of a judgment, however, because Movants required that the judgment include language foreclosing the constructive trust on the 79th Street Property and issuing a Special Execution and Order of Sale. Not unreasonably, Debtor believed that once such a judgment was entered, Movants would immediately proceed with the sale of his home, and would seize his non-exempt financial assets, leaving him and his family homeless and without resources or credit to acquire a new homestead. Accordingly, while the attorneys quarreled

---

[7]     Movants' Exhibit 8.
[8]     Debtor's Exhibit 14.
[9]     Movants' Exhibit 24.
[10]    Debtor's Exhibit 2; Movants' Exhibit 24.

over the content of the judgment, Debtor liquidated $1 million in securities that he held in a non-exempt investment account, used $200,000 of the proceeds to pay estimated income taxes on the transaction, and with the assistance of his counsel, purchased the 26th Street Property with the remaining $800,000.  Debtor took title to the property in his own name and established the property as his homestead.[11]

Movants and Debtor eventually submitted "dueling journal entry's [sic]" of judgment.[12]  Movants' proposed judgment contained the provisions foreclosing the 79th Street Property and ordering a sheriff's sale, and Debtor's proposed judgment did not.  On February 27, 2019, the judge signed Movants' form of Final Journal Entry of Judgment.[13] The Judgment was filed of record on March 8, 2019.

Debtor continues to vehemently dispute his liability to Movants for Wife's embezzlement.[14]  He appealed the Judgment, and the appeal is currently pending.  Debtor did not have sufficient cash or other assets to deposit with the state court to secure a stay of execution of the Judgment during the pendency of the appeal.  Nor was he able to obtain a supersedeas bond.  Accordingly, on March 20, 2019, Debtor filed in the state court a Motion to Stay Enforcement of Judgment and to Allow Alternate Security.  The motion

---

[11]     Movants' Exhibit 18.
[12]     Movants' Exhibit 24 (state court minute dated 2/21/2019).
[13]     Debtor's Exhibit 3; Movants' Exhibit 8.
[14]     Debtor also denies that Wife embezzled from Movants.  Instead, he believes that Wife participated with Movants in a scheme to defraud the IRS.  He testified that when Movants were audited, they "threw their sister [Wife] under the bus."  Whether Movants knew of or consented to Wife's withdrawal of funds from Movants' accounts is not relevant to any issue before this Court, however.  In any event, Wife's liability to Movants has been established by a final order that has been affirmed by the appellate court.  Currently Wife is not employed and has no ability to contribute to the payment of the Judgment.

6

was denied on July 22, 2019.[15]  Debtor then sought a stay from the Oklahoma Supreme Court, which motion was denied on September 9, 2019.[16]

On March 19, 2019, the eleventh day after the Judgment was entered, Movants garnished Debtor's bank and investment accounts, and obtained a continuing garnishment on Debtor's earnings.[17]  It was at that point that Movants discovered that Debtor had liquidated all but $91,000 of the securities in his investment account and had used the cash to purchase the 26th Street Property.

On July 22, 2019, Movants obtained an Order from the state court (1) authorizing a charging order on Debtor's interest in the LLC; (2) declaring Debtor's purchase of the 26th Street Property a fraudulent transfer; (3) enjoining Debtor from disposing of the 26th Street Property; and (4) imposing an equitable lien and constructive trust on the 26th Street Property (the "July 2019 Order").[18]  Debtor appealed the July 2019 Order to the Oklahoma Supreme Court, which appeal is also pending.[19]

In the late summer of 2019, Movants obtained Writ[s] of Special Execution and Order[s] of Sale to execute on both the 79th Street Property and the 26th Street Property. The state court issued notices setting both sheriff's sales for September 17, 2019.[20]  One day before the scheduled sales, Movants recalled the writs and notices,[21] but the next day,

---

[15]      Debtor's Exhibit 4.
[16]      Debtor's Exhibit 6.
[17]      Debtor's Exhibits 7-9, 12-13.
[18]      Debtor's Exhibit 4.
[19]      Debtor's Exhibit 5.
[20]      Debtor's Exhibits 21-24.
[21]      Debtor's Exhibits 25-29.

they obtained alias writs and notices, and the sheriff's sales were rescheduled for November 12, 2019.[22]  On September 30, 2019 ("Petition Date"), Debtor filed his petition for relief under Chapter 7 of the Bankruptcy Code,[23] and on October 2, 2019, Movants recalled the rescheduled sheriff's sales.[24]

According to Debtor's Petition, Schedules, and Statement of Financial Affairs,[25] Movants are Debtor's only creditors, and as of the Petition Date, their claim was $3,212,105.[26]  Debtor categorizes Movants' debt as neither consumer nor business.[27] Debtor acknowledges that Movants' debt is secured by the 79th Street Property and the 26th Street Property.

Debtor scheduled and valued his non-exempt assets as follows:

- the 79th Street Property - $215,800;

- a boat, motor and trailer - $6,000;

- deposits of money - $15,271;

- a promissory note - $43,000; and

- interests in four limited liability companies, three limited partnerships and a mineral lease -- collectively, $337,835.[28]

---

22      Debtor's Exhibits 30-33.
23      Debtor's Exhibit 37.
24      Debtor's Exhibits 34-36.
25      Debtor's Exhibit 37.
26      Debtor's Exhibit 37 at 020-021.
27      Debtor's Exhibit 37 at 006 and 033.
28      Debtor's Exhibit 37 at 011-017.  The stated value of non-exempt assets exceeds $600,000.

Debtor claims the 26th Street Property, valued at $800,000, as his exempt homestead, and as stated above, seeks to avoid Movants' lien or interest under § 522(f).[29] Movants contend, however, that the July 2019 Order granted them an equitable lien and constructive trust that is not avoidable.[30]

On his Schedule I, Debtor reported gross monthly income of $35,812, which, after deductions, resulted in take-home pay of $21,993.[31] Debtor indicated that he expects his income to decrease "due to [Movants'] continuous negative talk and loss of business."[32] Debtor's Schedule J[33] reflects lavash lifestyle choices for a family of three (*i.e.*, Debtor, Wife and one college-age son). Monthly expenses include $3,382 for non-mortgage home ownership expenses (*i.e.*, taxes, insurance, utilities, and maintenance), $2,150 for food, $1,800 for entertainment, $1,716 for the son's non-tuition college expenses, $1,350 for gas and car maintenance, $485 for utilities for a cabin that Debtor transferred to his daughter and for the 79th Street Property that is apparently vacant, and $10,000 per month for "litigation/appeal" attorney fees.[34]

In his Statement of Financial Affairs, Debtor disclosed his transfer of $800,000 of non-exempt funds to the seller of the 26th Street Property. He also disclosed his transfer of the cabin to his daughter in exchange for a $43,000 promissory note and the transfer of title

---

[29]    Debtor's Exhibits 37 at 045; Debtor's Exhibit 41.

[30]    Debtor's Exhibit 42.

[31]    Debtor's Exhibit 37 at 027-028.

[32]    Debtor's Exhibit 37 at 030.

[33]    Debtor's Exhibit 37 at 029 -030.

[34]    Debtor testified that he has already paid in excess of $1 million for attorney fees and expenses in connection with litigation with Movants.

to a Lincoln Navigator to Wife.[35] These transfers occurred a few weeks before the Judgment was entered.

Debtor has historically earned significant income in his capacity as an investment officer and advisor, as well as an investor of his own money.  According to his tax returns, Debtor had taxable income of $366,000 in 2016, $630,000 in 2017, and $443,000 in 2018.[36] Those returns further indicate that Debtor's after-tax income in 2016, 2017, and 2018 was $238,000, $410,000, and $315,000 respectively.[37]

In the six months between the entry of the Judgment and the Petition Date, Movants collected $131,818 from Debtor through garnishments and other executions.[38]  During that period, however, post-judgment interest added about $123,000 to the Judgment.[39]  Debtor testified he would be hard pressed to even chip away at the principal amount of the Judgment within his lifetime because interest on the Judgment will be accruing at approximately $200,000 per year.

**Conclusions of law**

A.  Section 707(a)

Section 707(a) provides that the Court may dismiss a Chapter 7 bankruptcy case for "cause," and lists three non-exclusive examples of "cause," including non-payment of filing

---

[35]     Debtor's Exhibit 37 at 037.
[36]     Debtor's Exhibits 38-39 (dollar figures roughly rounded).
[37]     Debtor's Exhibits 38-39 (calculated as taxable income less federal and state taxes payable) (dollar figures roughly rounded).
[38]     Debtor's Exhibit 13.  Since the bankruptcy, Movants have obtained relief from the automatic stay in order to execute on the 79th Street Property.
[39]     Calculated as follows: $598.70 [per-diem post judgment interest per Debtor's Exhibit 14] x 206 days = $123,332.20.

fees and failing to timely file schedules, statement of financial affairs and other required documents.  Beyond those enumerated examples, courts are left to determine on a case-by-case basis what constitutes sufficient cause to dismiss a Chapter 7 case.  Movants contend that Debtor has "taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of chapter 7."[40]  Specifically, Movants cite Debtor's substantial income, his prepetition efforts to shelter assets from execution, and his intent to deprive Movants of the opportunity to execute on the unstayed Judgment during the pendency of the appeal (*i.e.*, obtaining the protection of the automatic stay rather than posting a supersedeas bond or other security) as evidence that Debtor filed under Chapter 7 in "bad faith" and for a "wrongful purpose."[41]

Courts are divided on whether "bad faith" constitutes cause for dismissal under § 707(a).  Unfortunately, the Tenth Circuit has not weighed in on this issue.  After reviewing various cases from other circuits,[42] however, this Court is most persuaded by the analysis

---

[40]     Motion at 8, *quoting* In re Bushyhead, 525 B.R. 136, 152 (Bankr. N.D. Okla. 2015) (citations and quotations omitted).

[41]     Motion at 9.  As additional evidence of bad faith, Movants complain that Debtor failed to disclose in his schedules his grandfather's irrevocable trust of which he is trustee, and from which he has the right to withdraw four percent on an annual basis.  Debtor testified that he has never drawn any money from the trust.  Prepetition, Debtor disclosed the trust to Movants and to his counsel.  Debtor testified that he did not know whether the trust was an asset that was required to be disclosed on his schedules.  After the hearing on this matter, Debtor amended his schedules to include the trust.  The Court is satisfied that Debtor did not intend to hide his interest in the trust from the Court, Movants, or the Chapter 7 trustee.

[42]     See, e.g, In re Piazza, 719 F.3d 1253 (11th Cir. 2013) (prepetition bad faith may be cause to dismiss under § 707(a)); In re Perlin, 497 F.3d 364, 373 (3d Cir. 2007) (dismissal under § 707(a) for "bad faith" must be restricted to "egregious cases" involving (without limitation) "concealed or misrepresented assets and/or sources of income," "unexplained transfers to place assets beyond the reach of creditors," and/or "intention to avoid a large debt based upon conduct akin to fraud, misconduct or gross negligence"; "bad faith" cannot be predicated exclusively on debtor's substantial income or lavish lifestyle, or debtor's ability to repay debts); In re Tamecki, 229 F.3d

and rationale set forth in the recent case of <u>Janvey v. Romero</u>.[43]  In <u>Janvey</u>, a panel of the

Fourth Circuit Court of Appeals held that courts have discretion to dismiss a Chapter 7 case

filed in bad faith, but recognized that "the bar for finding bad faith is a high one."[44]  "In

short, bad faith exists only where the petitioner has abused the provisions, purpose, or spirit

of bankruptcy law."[45]  The Fourth Circuit observed that the "purpose" of bankruptcy law

was "to convert the estate of the bankrupt into cash and distribute it among creditors and

then to give the bankrupt a fresh start,"[46] and recognized that the Bankruptcy Code balances

the interests of debtors and creditors by imposing obligations and providing protections to

both constituencies.  In determining whether a debtor filed a Chapter 7 case in bad faith,

*i.e.*, abusive to the provisions, purpose, and spirit of the Bankruptcy Code, bankruptcy

courts must consider the totality of circumstances that led the debtor to seek bankruptcy

relief.[47]

    The party seeking to dismiss a case for bad faith has the burden of producing

sufficient evidence to bring the debtor's motivation into question, whereupon the burden

---

205, 207 (3d Cir. 2000) (court found cause to dismiss under § 707(a) for lack of good faith where
debtor sought to discharge a large credit card debt incurred just prior to filing bankruptcy).  <u>But
see</u> <u>In re Padilla</u>, 222 F.3d 1184 (9th Cir. 2000) (unlike Chapters 11 and 13, no mention of good
faith is made in Chapter 7) (applying pre-BAPCPA law); <u>In re Huckfeldt</u>, 39 F.R. 829 (8th Cir.
1994) (no statutory authority to dismiss under § 707(a) for "bad faith," but where debtor files a
Chapter 7 case for an improper non-economic, non-bankruptcy purpose, cause may exist to
dismiss; in that case, the court found no economic or bankruptcy purpose in filing by debtor who
simply sought to prevent his ex-wife from taking possession of property awarded to her in a
divorce).

[43]    883 F.3d 406 (4th Cir. 2018).

[44]    <u>Id</u>. at 412.

[45]    <u>Id</u>. (quotation marks and citations omitted).  <u>See also</u> <u>Bushyhead</u>, 525 B.R. at 152.

[46]    <u>Id</u>. at 410 (quotation marks and citations omitted).

[47]    <u>Id</u>. at 412-15.

shifts to the debtor to prove his good faith.[48]  As evidence that Debtor filed his Chapter 7 petition in bad faith, Movants point to the following undisputed facts:  (1) Debtor's only debt is to Movants; (2) Debtor is taking advantage of § 362 to stay execution of the Judgment pending appeal, notwithstanding that he has not posted a bond and was denied a stay by the state and appellate courts; (3) Debtor attempted to convert his non-exempt investment account into exempt homestead immediately prior to the entry of the Judgment, which the state court found was a fraudulent transfer made "with actual intent to hinder, delay, or defraud" Movants;[49] and (4) Debtor earns substantial income, a part of which he could devote to paying the Judgment.  Movants have met their burden of calling Debtor's good faith into question, so the burden shifts to Debtor to establish that he filed his petition for Chapter 7 relief in good faith.

The Court finds that Debtor met his burden.  Debtor became insolvent after ten years of bitter litigation and the entry of a huge judgment that Debtor believes will be reversed on appeal.  Debtor made attempts to settle the liability with Movants before the Judgment was entered, hoping that Movants would allow him and his family to keep the 79th Street Property, but Debtor's settlement offers were rebuffed.  Upon learning that Movants intended to obtain an order directing a sheriff's sale of the 79th Street Property, Debtor began searching for a home to purchase in his name only with his own separate funds, hoping that he could establish and protect a new homestead that was "not tainted" by Wife's

---

[48]     See Tameki, 229 F.3d at 207.
[49]     Debtor's Exhibit 4 at 015.

embezzlement. Upon entry of the Judgment, Movants immediately and aggressively executed on Debtor's income and assets, obtained an order declaring a constructive trust on his 26th Street Property, and set both of the 79th Street Property and the 26th Street Property for sheriff's sale. Believing that the Judgment and the July 2019 Order were erroneous, Debtor filed appeals, but had insufficient assets to pay the Judgment, deposit cash with the court, or procure a supersedeas bond in order to stay executions, garnishments, and the sheriff's sales. He asked the trial and appellate courts for a stay of execution pending prosecution of his appeal, but was unsuccessful on both accounts. Only then did Debtor decide to file bankruptcy. Suffice it to say that bankruptcy was not Debtor's first or preferred choice for obtaining some relief from the Judgment.[50] Indeed, Debtor realized that filing for bankruptcy would damage his professional reputation and earning capacity, but he felt that he had run out of options.

---

[50]    The Court notes that because the Judgment and July 2019 Order are on appeal, they are not "final" in the sense of gaining preclusive effect in this Court. When a federal court evaluates the preclusive effect of a state court judgment, it looks "to the preclusion law of the State in which the judgment was rendered." Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). The preclusive effect of the Judgment and July 2019 Order is therefore governed by Oklahoma law. Under Oklahoma's doctrine of issue preclusion, the party relying on the doctrine must establish: (1) a valid, final judgment on the merits in prior litigation; (2) the issue sought to be precluded is identical to one previously litigated; (3) the issue was actually litigated and necessarily determined in the prior proceeding; and (4) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum. See Salazar v. City of Oklahoma City, 1999 OK 20, 976 P.2d 1056, 1060–61; Nealis v. Baird, 1999 OK 98, 996 P.2d 438, 458 and n.86. For the purpose of issue preclusion, "[a] final judgment is one in which no appeal has been perfected within the time allotted by law or one in which an appeal has been properly perfected and acted upon by the highest court whose review has been sought." Nealis, 996 P.2d at 459. Debtor's appeal is pending so the Judgment and July 2019 Order are not final on the merits. The Court expresses no opinion concerning the merits of the Judgment or the July 2019 Order or the appeal.

Nothing in the Bankruptcy Code precludes a debtor from filing a Chapter 7 case while appealing an adverse judgment and taking advantage of a temporary stay of execution.  Section 362(a) specifically anticipates that a debtor may need to stay "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case."[51]  The fact that Debtor will enjoy the benefit of the automatic stay is not indicative of a bad faith filing.

It is also not unreasonable or improper that Debtor would want to bring more than a decade of litigation to a close, and to earn the proverbial fresh start, by subjecting himself and his assets to the jurisdiction of this Court.  Debtor is 58 years old with an uncertain future earning capacity.  He does not now have the resources to pay Movants the $3.2 million debt.  There is nothing in the record that indicates that Debtor will ever have the resources to pay the debt, or even the post-judgment interest as it accrues.

The Court notes that this is not a "no-asset" case.  As a Chapter 7 debtor, Debtor is voluntarily surrendering all his non-exempt assets, valued in excess of $600,000 for the benefit of creditors, *i.e.*, Movants.  Debtor did not object to Movants' stay relief motion, and they are free to execute on the 79th Street Property.  To the extent Debtor transferred assets prepetition, Debtor is aware that the Chapter 7 trustee may inquire into such transfers and seek to avoid them if appropriate, again, for the benefit of the Movants.

---

[51]     11 U.S.C. § 362(a)(2).

The Court further finds that Debtor's attempt to preserve a homestead for himself and his family is not an indicator of bad faith.[52]  The Bankruptcy Code specifically permits debtors to avoid judicial liens on homestead property.  Under the unique and convoluted circumstances of this case, the Court anticipates that Debtor's pursuit of lien avoidance will be highly contested by Movants, and Debtor may or may not prevail, but the Court cannot find that Debtor's motivation is illegitimate.

Movants argue that Debtor is simply disqualified from seeking Chapter 7 relief on the ground that he committed prepetition fraud and willful misfeasance.  Dismissal is not warranted under such circumstances because Sections 523 and 727, in conjunction with Bankruptcy Rules 4004 and 4007, provide specific relief to creditors who claim to be victims of a debtor's prepetition fraud or misfeasance.

Under the totality of the circumstances, the Court finds that Debtor's stated motives for filing bankruptcy objectively coincide with the purposes of the Bankruptcy Code. Debtor did not file this case to harass Movants or to achieve non-economic, non-bankruptcy relief, or for any other wrongful purpose.  Debtor seeks relief from an overwhelming judgment, zealous collection activity, foreclosure of his home, and expensive ongoing litigation.  Debtor may or may not achieve these objectives, but he should not be denied the opportunity to seek relief.  Concomitantly, Movants will not be

---

[52]     The state court found that Debtor's acquisition of the 26th Street Property was a transfer fraudulent to Movants.  Again, because that order is being appealed, that finding is not binding on this Court under any preclusion doctrine.

left empty-handed; the Bankruptcy Code affords them a panoply of rights and remedies to further protect their interests.

Movants' motion to dismiss for cause under 11 U.S.C. § 707(a) is therefore denied.

B.    Section 707(b)

Movants also move to dismiss Debtor's bankruptcy case pursuant to § 707(b)(1), which provides that the Court may dismiss a Chapter 7 case filed by an individual debtor-

> whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7].[53]

Section 707(b) further provides—

> In considering . . . whether the granting of relief would be an abuse of the provisions of [Chapter 7], the court shall presume abuse exists if the debtor's current monthly income reduced [by allowable expenses] and multiplied by 60 is [above a certain threshold].[54]

Debtor stipulates that under the so-called Means Test set forth above, his disposable income exceeds the stated threshold.  Accordingly, *if* § 707(b) applies to Debtor's case, the Court must presume that granting relief would be an abuse of the provisions of Chapter 7, and must dismiss or convert the case.[55]

In § 707(b)(1), the term "primarily" relates to the relative amount of consumer and non/consumer debt.  In order for § 707(b) to apply in a Chapter 7 case, a debtor's consumer

---

[53]    11 U.S.C. § 707(b)(1).

[54]    11 U.S.C. § 707(b)(2)(A)(i).

[55]    Although § 707(b)(2)(B) permits a debtor to rebut a presumption of abuse "by demonstrating special circumstances," Debtor did not present evidence of special circumstances or argue that any such circumstances exist.

debt must exceed fifty percent of the total debt.[56]  "Consumer debt" is defined in § 101(8) as "debt incurred by an individual primarily for a personal, family, or household purpose."[57] The use of  "primarily" in § 101(8) relates to the purpose for which the debtor "incurred" the debt.

Movants contend that the entire Judgment is "consumer debt" because it represents Debtor's liability for funds embezzled by Wife that she used for personal, family, or household purposes.  Debtor claims that Debtor did not "incur" the debt; instead, he argues, he was involuntarily saddled with debt that Wife incurred to Movants by embezzling Movants' money.  Movants contend that Debtor was unjustly enriched in the entire amount that Wife embezzled because Wife's expenditure of embezzled funds meant that Debtor "saved" the same amount.  In addition, Movants contend that Debtor directly benefited from some of Wife's use of the embezzled funds.  Movant bears the burden of proving all elements of § 707(b) by a preponderance of the evidence.[58]

The Court finds that Movants failed to establish that the debt represented by the Judgment in the amount of $1.8 million consists of "primarily consumer debt."  The issue is whether Debtor incurred "consumer debt" in excess of fifty percent of that amount of the Judgment.  Debtor did not have access to the embezzled funds, so *he* did not spend them for personal, family, or household purposes.  Any expenditures for these purposes would have been made by Wife.  While Wife's expenditures might be characterized as debt *she*

---

[56]     See In re Stewart, 175 F.3d 796, 808 (10th Cir. 1999).
[57]     11 U.S.C. § 101(8).
[58]     See, e.g., In re Cherrett, 523 B.R. 660, 668 (B.A.P. 9th Cir. 2014); In re Grillot, 578 B.R. 651, 656 (Bankr. D. Kan. 2017).

incurred for consumer purposes, the evidence is insufficient to establish that Debtor participated, directly or indirectly, in expending Movants' money for consumer purposes.

Movants produced evidence that Debtor acquiesced and benefited from the following of Wife's expenditures for family or household purposes:

$135,000 to remodel the 79th Street Property;

$19,224 to purchase a boat, motor and trailer;

$13,000 to purchase a motor vehicle for their daughter;

$6,000 for a family trip to Hawaii;

$3,585 for a family trip to Fort Walton Beach, Florida; and

$6,400 for a pool table.

For the sake of argument, the Court will characterize these expenditures as consumer debt Debtor incurred.  The total of these expenditures is $183,209, substantially less than fifty percent of the $1.8 million Judgment.  Movants argue that Wife also funded certain ordinary household expenses during the 2004-2009 period with embezzled funds, such as groceries, utilities, the children's nanny, summer camp and the like.[59]  But Movants failed to quantify the family or household expenses that Wife allegedly paid with embezzled funds.  The Court cannot assume that every dollar Wife embezzled and spent benefited Debtor, his household, or his family.

Moreover, Debtor testified that Wife spent embezzled funds on goods and services for herself and "other people."  Wife's personal expenses are not Debtor's personal

---

[59]     During this period, Debtor paid from his earnings the mortgage on the 79th Street Property, his country club dues and expenses, car payments, and his own personal expenses.

expenses.  There is no evidence that her personal spending and gifting benefited Debtor, or, more to the point, that Debtor would have funded Wife's personal expenses and gifts from his earnings or savings (or incurred debt for those purposes).  Thus, the Court cannot conclude that Debtor "saved" any amounts Wife spent on herself and "other people."  On the contrary, Debtor testified that he began keeping his finances separate from Wife's early in their marriage, and did not contribute his earnings to her checking account for her to spend on herself because he found her spending habits "frightening" and out of control.  Accordingly, the Court finds that to the extent Debtor has been held liable to Movants for embezzled funds that Wife spent on herself and "other people" -- expenses Debtor historically would not have funded from his own earnings – that indebtedness cannot be characterized as consumer debt incurred by Debtor.

Movants argue that Debtor's investment account represented earnings Debtor stashed away while Wife spent embezzled funds on the family and household during the 2004-2009 period.  Debtor credibly testified that he funded the investment account in the late 1990s with approximately $100,000 in inherited money.  The value of the account varied throughout the 2004-2009 period, and prior to the 2008 recession, peaked at $1.7 million.[60]  Although $1.7 million is, coincidentally, the approximate amount Wife embezzled and spent, there is no evidence that Wife's embezzlement had any effect on the value of Debtor's investment account.  As Debtor testified, he did not deposit any "saved"

---

[60]     Movants' Exhibit 13.  Movants introduced account statements for the periods of August 2008 through November 2008, and for the month of December 2018.  Movants' Exhibits 13-16.

earnings into the account.[61]  The undisputed evidence indicates that the increase in the value of the investment account was the result of Debtor's aggressive investment strategies and the market.  The Court finds that the existence and value of Debtor's investment account at various points of time does not shed light on any issue relevant to whether Debtor's debt to Movants is primarily consumer debt.

Because Movants failed to establish by a preponderance of the evidence that more than fifty percent of the Judgment meets the definition of "consumer debt" that was incurred by Debtor, their motion to dismiss under §707(b) is denied.

**Conclusion**

For the reasons stated herein, Movants' Motion to Dismiss is denied.

**SO ORDERED** this 8th day of April, 2020.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

---

[61]     Debtor testified that he made deposits to meet margin calls during the recession of 2008-2009, well after the value of the account peaked in August of 2008.  By the end of November 2008, the value of the securities in the account had dwindled to about $100,000, and Debtor's margin loan still had a $100,000 balance.  Movants' Exhibit 16.